United States District Court
Northern District of California

1
2
3
4
5
6
7          UNITED STATES DISTRICT COURT

8          NORTHERN DISTRICT OF CALIFORNIA

9

10   JANE DOE, et al.,

            Plaintiffs,                          Case No. 21-cv-02138-RS

11

12        v.                                     **OPINION AND ORDER**

13   BLUE SHIELD OF CALIFORNIA,

            Defendant.

14

15

16                              **I. Introduction**

17          In this action averring violations of the Employee Retirement Income Security Act of 1974

18   ("ERISA"), Plaintiff John Doe seeks mental health benefits for his daughter Jane Doe's residential

19   treatment under an employee benefit plan ("Plan") administered by Defendant California

20   Physicians' Service dba Blue Shield of California ("Blue Shield"). Jane received benefits for four

21   weeks of care for her eating disorder at a residential treatment program, but Blue Shield decided

22   that residential treatment was no longer medically necessary at the conclusion of that four week

23   period, and instead recommended a day treatment program. Reviewing for abuse of discretion,

24   Blue Shield's denial was unreasonable, and judgment will be granted in favor of Plaintiffs.[1] This

25   decision, however, only covers the denial of benefits between January 7, 2021 and January 18,

26   2021—the period assessed in Blue Shield's decision—and thus the period following January 18,

27   _____

28   [1] The administrative motions to file materials under seal, *see* Dkt. Nos. 41, 43, are granted.

1    2021 is remanded for determination of benefits by the administrator. This Opinion and Order

2    comprises the findings of fact and conclusions of law required by Federal Rule of Civil Procedure

3    52(a).

4                                        **II. Factual Background**

5              In 2020, Jane was a 22-year-old college student who had struggled with anorexia nervosa

6    since her senior year of high school. She also suffered from severe anxiety (including panic

7    attacks) and obsessive-compulsive disorder ("OCD"). She previously received treatment in

8    intensive outpatient, partial hospitalization, and inpatient hospitalization settings, and had prior

9    instances of self-harm and suicidal thoughts. On December 10, 2020, Jane was admitted to

10   residential treatment at Avalon Hills Treatment Center ("Avalon"), an in-network provider with

11   Blue Shield. Her diagnoses at the time were anorexia nervosa, generalized anxiety disorder, panic

12   disorder, and OCD. Blue Shield approved benefits from December 10, 2020 to January 6, 2021.

13             On January 6, 2021, a peer review phone call was held between Jane's treatment team at

14   Avalon and Blue Shield's physician. On January 8, 2021, Blue Shield issued a letter denying

15   approval for residential care at Avalon from January 7, 2021 forward. On January 19, 2021,

16   Avalon submitted a written expedited appeal with treatment records and letters of support from

17   Jane's treatment team. In a five-page letter, Jane's therapist Amanda Willett wrote, among other

18   observations, that "[Jane] CANNOT manage the most basic person need, eating" and that "[Jane]

19   is very clear that if left to herself, she would return to restrictive eating." AR 349. In a two-page

20   letter, nurse practitioner Chad Speth detailed Jane's ongoing symptoms, concluding that he was

21   "concerned that were she to be treated at a lower level of care that there is a high likelihood of

22   relapse with potential associated morbidity and/or mortality." AR 352. Blue Shield denied this

23   grievance on January 22, 2021. In its letter denying the appeal, Blue Shield noted that Jane's

24   appeal "was looked at by an independent psychiatrist who agrees that care at a residential program

25   from January 7, 2021 and going forward, is not medically necessary, and [Jane] could have safely

26

27

28

been treated in a daytime only program."[2] Administrative Record ("AR") 398. The letter provided much of the same basis for denial as the January 7 letter, and explained as follows:

> The most appropriate level of care for your ongoing care is treatment only during the daytime (partial hospitalization program, also called IOP). You can safely spend your nights and weekends away from Avalon Hills Adult Health Care. You were not a danger to yourself or others. You were cooperative in your treatment. You did not need care 24 hours per day. It was not likely that treatment only during the daytime (PHP) instead of treatment 24 hours per day would increase your chance of getting worse (relapse).

*Id.* Jane remained in residential treatment at Avalon until July 31, 2021, with Plaintiffs paying out of pocket for Jane's residential care.

### III. Legal Standard

The parties dispute the applicable standard of review. Plaintiffs argue that de novo review applies; Defendant argues that abuse of discretion review applies. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "That means the default is that the administrator has no discretion, and the administrator has to show that the plan gives it discretionary authority in order to get any judicial deference to its decision." *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999). The parties do not dispute that the relevant plan document states the administrator has discretion to interpret the plan; instead, Plaintiff argues that California law prohibits the kind of discretionary language present in the plan, citing language in California Insurance Code § 10110.6(a) which states that "[i]f a policy. . . that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer .

---

[2] The letter also explained that "A Blue Shield Medical Director who is a California licensed physician and board certified in Obstetrics and Gynecology reviewed your request. In addition, your case was reviewed by a physician who is board certified in Psychiatry." AR 398. The letter did not specify, however, whether opinions from these doctors were considered in reaching the determination, or how they were considered.

1    . . to interpret the terms of the policy . . . that provision is void and unenforceable."

2          Defendant argues that section 10110.6 applies only to health insurance policies, not

3    managed health care plans like the plan at issue here. As Defendant explains, Blue Shield is a

4    health care service plan subject to the Knox-Keene Act and regulated by the Department of

5    Managed Health Care ("DMHC"), *see Hailey v. Cal. Physicians' Serv.*, 158 Cal. App. 4th 452,

6    460-63 (2007), and a plan regulated by the DMHC is not subject to the Insurance Code or the

7    California Department of Insurance's rules and regulations. *See* Cal. Ins. Code § 791.02(k)

8    ("'Insurance institution' shall not include . . . health care service plans regulated pursuant to the

9    Knox-Keene Health Care Service Plan Act[.]"). As Defendant points out, other courts have

10   recognized that California law treats health insurance policies different than health care service

11   plans. *See, e.g. Namdy Consulting, Inc. v. UnitedHealthcare Ins. Co.*, No. CV 18-01283-RSWL-

12   KS, 2018 WL 6430119, at *3 (C.D. Cal. July 11, 2018) ("[T]he Legislature has elected to subject

13   insurers and health care service plans to distinct regulatory regimes. Insurers are regulated by the

14   Insurance Code and the Insurance Commissioner. Health care service plans fall under the

15   jurisdiction of the Department of Managed Care and the Knox-Keene Act." (quoting *Smith v.*

16   *PacifiCare Behavioral Health of Cal., Inc.*, 93 Cal. App. 4th 139, 159 (2001)).

17         Further, Defendant points out that California recently enacted a corollary of the prohibition

18   in California Insurance Code § 10110.6 that explicitly applies to health care service plans.

19   California Health & Safety Code § 1367.045(a) provides that "[i]f a health care service plan

20   contract . . . contains a provision that reserves discretionary authority to the plan, or an agent of the

21   plan, to determine eligibility for benefits or coverage, to interpret the terms of the contract, or to

22   provide standards of interpretation or review that are inconsistent with the laws of this state, that

23   provision is void and unenforceable." This section, which concerns health care service plans, is

24   applicable to Blue Shield. The statute, however, only applies to contracts "offered, issued,

25   delivered, amended, or renewed on or after January 1, 2021." Cal. Health & Safety Code §

26   1367.045(a). The Plan in this case was issued on October 1, 2020. Given the clear language about

27   the effective date of the statute, there is no indication that the legislature intended for California

28

1    Health & Safety Code § 1367.045(a) to apply retroactively. Section 1367.045(a) therefore does not

2    apply to the plan, and the standard of review is abuse of discretion.

3           "In reviewing for abuse of discretion, [the court] consider[s] all of the relevant

4    circumstances in evaluating the decision of the plan administrator." *Pac. Shores Hosp. v. United*

5    *Behav. Health*, 764 F.3d 1030, 1041 (9th Cir. 2014). Review for abuse of discretion requires

6    assessing whether the administrator's decisions was "(1) illogical, (2) implausible, or (3) without

7    support in inferences that may be drawn from the facts in the record." *Salomaa v. Honda Long*

8    *Term Disability Plan*, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks and citation

9    omitted). The court may "weigh[] a conflict of interest as a factor in abuse of discretion review."

10   *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006) (en banc).

## IV. Discussion

12          For a multitude of reasons, Blue Shield abused its discretion in its denial of further

13   residential care for Jane. First, the denial letter was barebones. Although the letter indicated that

14   Blue Shield used the Level of Care Utilization System ("LOCUS") guidelines in reaching its

15   determination, it failed to discuss any parts of the record or even mention evidence Jane and her

16   treatment team submitted on her behalf. It provided no basis for its conclusions such that Jane was

17   "not a danger" to herself or others and that Jane was "cooperative" in her treatment. AR 398. The

18   only reference to any evidence that Blue Shield chose to credit was the sentence that "your appeal

19   was also looked at by an independent psychiatrist who agrees that care at a residential program

20   from January 7, 2021 and going forward, is not medically necessary, and you could have safely

21   been treated in a daytime only program." *Id.* Blue Shield's denial letter is a recitation of

22   conclusions, with next to no information about how it arrived at those conclusions.

23          What regulations controlling the denial of benefits "call[] for is a meaningful dialogue

24   between ERISA plan administrators and their beneficiaries." *Booton v. Lockheed Med. Ben. Plan*,

25   110 F.3d 1461, 1463 (9th Cir. 1997). "If benefits are denied in whole or in part, the reason for the

26   denial must be stated in reasonably clear language, with specific reference to the plan provisions

27   that form the basis for the denial[.]" *Id.* Blue Shield's denial letter was not in any way a

28

United States District Court
Northern District of California

meaningful dialogue. The review of an appeal must take[] into account all comments, documents, records, and other information submitted by the claimant relating to the claim[.]" 29 C.F.R. § 2560.503-1(h)(iv). Further, a plan administrator "may not arbitrarily refuse to credit a claimant's reliable evidence[.]" *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003). By not even mentioning any of the evidence Jane submitted, Blue Shield arbitrarily refused to credit that evidence. Had Blue Shield discussed the evidence, perhaps it could have provided reasons for discounting or disregarding that evidence. Instead, Blue Shield apparently chose to "ma[ke] its decision blindfolded[.]" *Booton*, 110 F.3d at 1463. Other district courts, including ones conducting an abuse of discretion review, have rejected denials of benefits when the explanation is so barebones that it is unclear what the administrator considered or how it weighted the evidence. *D.K. v. United Behav. Health*, No. 2:17-CV-01328-DAK, 2021 WL 2554109, at *11 (D. Utah June 22, 2021), *appeal dismissed*, No. 21-4112, 2021 WL 7543628 (10th Cir. Sept. 22, 2021) ("[T]he denial letters similarly do not contain any specific citation to the medical record whatsoever. Instead, the denial letters simply contain general statements about A.K.'s condition on admission and minimal statements about her treatment while at Discovery."); *Scott M. v. Blue Cross & Blue Shield of Mass.*, 528 F. Supp. 3d 1200, 1219-20 (D. Utah 2021), *appeal dismissed*, No. 21-4053, 2021 WL 8154930 (10th Cir. Aug. 27, 2021) (rejecting administrator's rationale when it "only prepared conclusory statements that [claimant]'s 'clinical condition does not meet the medical necessity criteria required for acute psychiatric inpatient stay in the area of immediate safety risk'").

Relatedly, in issuing a barebones denial letter, Blue Shield ignored the opinions of Jane's treatment team. Although ERISA does not require administrators to "accord special deference to the opinions of treating physicians[,]" plan administrators "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Nord*, 538 U.S. at 831, 834. As a court in the District of Utah explained, when the plan administrator "neither referred to [the treating physician]'s report, nor indicated that [the plan administrator] had either considered the report or made contact with [the physician] to resolve any concerns[,]" the failure

1   to address the letter from the physician "was violative of ERISA procedural safeguards." *Scott M.*,

2   528 F. Supp. 3d at 1219. Here, the denial letter fails even to mention the opinions of the treatment

3   providers, and thus provides no basis to ignore their opinions.

4        Next, parts of the denial letter appear contradicted by the record, without any effort to

5   discount the evidence that contradicts the conclusions in the letter. The denial letter tells Jane

6   "[y]ou were not a danger to yourself or others." The letter from Willett, Jane's primary therapist at

7   Avalon, tells a different story. In the January 14 letter, Willett explains as follows:

> [Jane] is experiencing a recent increase in her suicidal thoughts, which are brought about during meals and snacks and exacerbated by her thoughts and feelings that she is losing the control she sought through the eating disorder, leaving her feeling helpless . . . [Jane] also experiences self-harm thoughts and has engaged in self-harm, while in care. While [Jane] is able to currently contract for safety, [] she reports that she is unsure if she can manage her suicidal and self-harm urges consistently.

13  AR 348. Willett's observations are also supported by the treatment notes. For example, in a

14  therapy progress note from January 11, 2021, Willett noted that "[Jane] worries that her suicidal

15  thoughts will 'take over her' and she will not be able to control herself from acting on them." AR

16  281. On January 18, Willett noted that the prior week "[Jane] self-harmed through scratching

17  (without breaking skin) in order to 'numb out' from her emotions." AR 278. Defendant is correct

18  that suicidal thoughts and ideations, as well as thoughts and behaviors of self-harm, fall on a

19  spectrum. *See Josef K. v. California Physicians' Serv.*, 477 F. Supp. 3d 886, 900-901 (N.D. Cal.

20  2020) (noting that while "any mention of suicide from an adolescent may be troubling[,]" a plan

21  administrator did not abuse its discretion in concluding a patient did not have suicidal ideations

22  despite past remarks concerning suicide because "suicidal ideations, like many other conditions,

23  fall on a spectrum"). Blue Shield, however, did not explain why these reports from Willett were

24  not concerning—it simply ignored them.

25       The reviewers Blue Shield ostensibly relied upon in reaching its conclusions also appeared

26  to ignore record evidence, because some of their conclusions were directly contradicted by

27  information provided by Jane's treatment team. For example, in assessing the LOCUS score, for

United States District Court
Northern District of California

category V – treatment and recovery history – the AMR reviewer noted that Jane was "fully responsive to treatment and recovery management" and "[t]here was no indication that the patient had any prior treatment that was unsuccessful in managing her symptoms." AR 412. This statement stands in stark contrast to Jane's prior treatment history. As Blue Shield described Jane's prior treatment history in its own notes from a call with Avalon, Jane has a "4-year history of [eating disorder] with anxiety and OCD that has no history of restoration." AR 139. Avalon's therapist intake assessment described how in the years since she developed the eating disorder, Jane had cycled in and out of both inpatient and outpatient programs, but had never been able to reach the weight recommended by her outpatient physician. AR 265. Further, the Advanced Medical Reviews ("AMR") assessment—which was referred on January 20, 2021 and completed the following day—stated "[t]here was no indication that the patient had ongoing suicidal or homicidal ideations[.]" AR 411. Although the review purportedly concerned Jane's status on January 7, and it is not clear that Jane's suicidal ideations had resumed before that date, the AMR assessment of Jane's safety was outdated in light of the reports her treatment team submitted on appeal.

Draped over this entire landscape of errors and omissions is Blue Shield's conflict. "What the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular plan and a particular set of medical and other records." *Abatie*, 458 F.3d at 969. Here, "the plan administrator faces a structural conflict of interest: since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 630 (9th Cir. 2009). In this instance, Blue Shield provided minimal analysis, ignored record evidence, and even contradicted information provided by the treatment team without any attempt at explanation. Given the structural conflict, these errors are weighed even more heavily.

Considering "all of the relevant circumstances[,]" *Pacific Shores Hospital*, 764 F.3d at 1041, Blue Shield abused its discretion in denying residential treatment for the period from

1   January 7, 2021 to January 18, 2021. The decision was both "illogical" and "without support in

2   inferences that may be drawn from the facts in the record." *Salomaa*, 642 F.3d at 676.

3                                          **V. Remedy**

4           "The Ninth Circuit has indicated that, if a decision to deny benefits is found unreasonable,

5   then a 'court can either remand the case to the [plan] administrator for a renewed evaluation of the

6   claimant's case, or it can award a retroactive reinstatement of benefits.'" *Bain v. Oxford Health*

7   *Ins. Inc.*, No. 15-CV-03305-EMC, 2020 WL 808236, at *11 (N.D. Cal. Feb. 14, 2020) (quoting

8   *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 907 (9th Cir. 2016)). "[A] plan administrator will

9   not get a second bite at the apple when its first decision was simply contrary to the facts." *Grosz-*

10  *Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163 (9th Cir. 2001). There is no reason

11  here why Blue Shield should be given a second bite at the apple. For the period that Blue Shield

12  considered when denying coverage, the evidence consistently points towards the need for

13  continued residential care. Jane experienced a return of suicidal thoughts. While she had made

14  some progress in treatment, she expected to return to limiting meals and snacks if she returned

15  home. Prior treatment, in both residential and outpatient settings, had limited success. As noted by

16  the American Psychiatric Association Guidelines, "[p]atients with inadequate motivation or

17  support who are discharged from inpatient to partial hospitalization programs before they are

18  clinically ready often have high rates of early relapse, greater struggles with recovery, and slower

19  rates of progress, necessitating longer future inpatient stays." *Rachel S. v. Life & Health Benefits*

20  *Plan of the Am. Red Cross*, No. 2:14-CV-778, 2020 WL 6204402, at *3 (D. Utah Oct. 22, 2020).

21          Blue Shield's decision, however, only addressed the period between January 7, 2021 and

22  January 18, 2021, and did not consider evidence beyond that time. Jane stayed at Avalon receiving

23  residential care through July 2021. Courts may remand to the plan administrator to make factual

24  determinations of unresolved issues. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben.*

25  *Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (permitting "remand to the plan administrator for an initial

26  factual determination"); *see also Carrier v. Aetna Life Ins. Co.*, 116 F. Supp. 3d 1067, 1084 (C.D.

27  Cal. 2015) (remanding to the plan administrator when "there [was] nothing in the Administrative

28

United States District Court
Northern District of California

1    Record for the Court to resolve [a] factual issue"). The question of whether any benefits are due

2    for the period of residential care between January 19, 2021 and July 31, 2021 is therefore

3    remanded to the administrator for determination of whether any portion of that period should have

4    been covered by the Plan.

5       Finally, Plaintiffs bring a claim for equitable relief under 29 U.S.C. § 1132(a)(3). Plaintiffs

6    do not address this claim in their Opening Trial Brief. In the Responding Trial Brief, Plaintiffs clarify

7    that they "seek equitable relief in the manner of a remand to Blue Shield regarding residential

8    treatment for dates of service from January 19, 2021 to Jane's discharge on July 30, 2021." Plaintiffs'

9    Responsive Trial Brief, p.23. As explained above, remand is warranted as the plan administrator did

10   not make a factual determination as to the period after January 18, 2021. Although it is unclear

11   whether this is properly fashioned as "equitable relief" or simply the required course of action in the

12   absence of a factual determination, remand is appropriate for the period after January 18, 2021.

13      The Court will retain jurisdiction over this matter until the review on remand is completed.

14   Although the absence of information in the record about Jane's condition after January 2021 means the

15   Court takes no position on whether a further award of benefits is warranted, Blue Shield is warned to

16   provide a fuller explanation of any denial of benefits, if it decides to deny benefits for any further

17   period. Following the conclusion of Blue Shield's review on remand, the parties are directed to request

18   a case management conference should further proceedings before this Court be necessary. If no further

19   proceedings are needed, the parties are directed to provide a joint statement so stating, and judgment

20   will be entered at that time.

21                **VI. Conclusion**

22      For all the foregoing reasons, the Court concludes that Blue Shield abused its discretion in

23   denying coverage for residential treatment for the period between January 7, 2021 and January 18,

24   2021, and benefits are awarded for that time period. The matter is remanded to the administrator

25   for the determination of whether benefits are due for any period between January 19, 2021 and

26   July 31, 2021 under the Plan.

27

28

United States District Court
Northern District of California

**IT IS SO ORDERED**.

Dated: August 8, 2022

RICHARD SEEBORG
Chief United States District Judge